1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CURTIS A. JENNINGS, III,<br><br>Plaintiff,<br><br>vs.<br><br>U-HAUL INTERNATIONAL, *et al.*,<br><br>Defendants. | NO. 11-CV-1888-MMA(WMC)<br><br>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; and<br><br>[Doc. No. 54]<br><br>DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT.<br><br>[Doc. No. 65] |

    Pending before the Court are Defendants' motion for summary judgment and Plaintiff's motion for leave to file an amended complaint. The Court finds these matters suitable for decision on the papers and without oral argument pursuant to Local Civil Rule 7.1 For the reasons set forth below, the Court **GRANTS** Defendants' motion for summary judgment and **DENIES** Plaintiff's motion for leave to file an amended complaint.

/ / /
/ / /
/ / /
/ / /
/ / /

## I. BACKGROUND

### A. Procedural Background

On August 19, 2011, Plaintiff Curtis Jennings, III, brought suit against Defendants U-Haul International, Inc. ("U-Haul") and AMERCO[1] (collectively "Defendants"). The Complaint alleges several claims arising from a disputed vehicle rental agreement between U-Haul and William Basset, an acquaintance of Plaintiff. [Compl., Doc. No. 1.] On October 12, 2011, Defendants filed an Answer, denying all allegations and asserting thirteen affirmative defenses. [Doc. No. 5.] On February 25, 2013, Defendants filed a motion for summary judgment or, in the alternative, to dismiss the complaint. [Doc. No. 54.] Plaintiff filed an opposition and Defendants replied.

As part of his opposition to Defendants' motion for summary judgment, Plaintiff requests leave to file an amended complaint. Plaintiff later separately filed a formal motion for leave, making similar arguments as in his opposition. [Doc. No. 65.]

### B. Factual Background

On May 19, 2011, Plaintiff went to a U-Haul facility in San Diego, California, to rent a vehicle. [Compl. ¶ 13.] Because the particular location was closing and Plaintiff did not have a driver's license in his possession, U-Haul did not rent a vehicle to him. [*Id.*] Plaintiff alleges that a U-Haul employee informed him that a friend of Plaintiff, who did have a valid driver's license with picture identification, could be placed on the rental application as an "authorized driver." [*Id.* ¶ 14.]

On May 20, 2011, Plaintiff returned to the same U-Haul location with an acquaintance, William Basset, who possessed a "valid [driver's] license for purposes of the contract." [*Id.* ¶ 17.] Plaintiff alleges that through the negligence of

---

[1] Erroneously sued as "AMERICO Financial Life and Annuity Company."

a U-Haul employee, Basset executed the Equipment Rental Contract ("Contract") as a "contracting party" instead of as an "authorized driver."  [*Id.* ¶ 18; Evans Decl., ¶ 2, Exh. 1.]  Plaintiff did not sign the Contract.  [Evans Decl., ¶ 2, Exh. 1.]  Plaintiff further alleges that the U-Haul employee who executed the Contract informed him that he "was unable to correct the error in the contract due to the automatic shut-down of the corporate computer system."  [Compl. ¶ 19.]

After renting the truck, Plaintiff alleges that he had an argument with Basset.  [*Id.* ¶ 20.]  Thereafter, Basset "stole the vehicle by hot[-]wiring the ignition and fleeing with . . . Plaintiff's property."  [*Id.*]  San Diego Police Officers then stopped Basset, discovered he had a suspended license, and impounded the U-Haul truck.  [*Id.* ¶¶ 21-22.]  Upon U-Haul's retrieval of the rental truck from the impound lot, U-Haul employees discovered Plaintiff's personal property inside the truck.  [Mot. at 2.]  U-Haul arranged for the storage of the personal property.  [*Id.*]  Plaintiff alleges the personal property in U-Haul's possession rightfully belongs to him, and he has been unable to recover it "until the bill for the rental and the impound fees and penalties are paid."  [Compl. ¶ 22.]

**C.   Plaintiff's Allegations**

Plaintiff brings claims for (1) breach of contract, breach of quasi-contract, breach of implied covenant of good faith and fair dealing, (2) unjust enrichment, and (3) negligence.

With respect to the breach of contract claims, Plaintiff alleges that he "executed the contract and/or 'quasi-contract' with Defendants . . . as Plaintiff was . . . supposed to be the primary party and the *ipso facto* party-in-interest tendering the consideration . . . for the rented vehicle."  [Compl. ¶ 25.]  Plaintiff further alleges that Defendants "breached . . . by failing to correctly execute the agreement so as to show Plaintiff as the contracting party."  [*Id.* ¶ 26.]   As a result of this breach, Plaintiff avers that "Defendants knew or should have known that the ambiguity in the contract may result in a controversy."  [*Id.* ¶ 30.]

With respect to the unjust enrichment claim, Plaintiff alleges that Defendants "would be unjustly enriched if allowed to collect rental fees" because Plaintiff did not have access to the rental vehicle as a result of the "erroneous contract." [*Id.* ¶ 35.]

Lastly, with respect to the negligence claim, Plaintiff alleges the elements of a general negligence claim: Defendants owed a duty of care to Plaintiff, Defendants breached that duty, and the breach proximately caused Plaintiff damages. [*Id.* ¶ 40.]

**D. Defendants' Statement of Undisputed Facts[2]**

On May 19, 2011, Plaintiff went to a U-Haul facility located in San Diego to rent a truck. A U-Haul employee informed Plaintiff that he could not rent a U-Haul truck without a driver's license and photo identification. On May 20, 2011, Plaintiff returned to the U-Haul rental facility with an acquaintance, William Basset, who (according to Plaintiff) had a valid driver's license for the purposes of the contract. Basset executed the Contract on May 20, 2011. Plaintiff did not sign the Contract. The Contract is fully integrated and states that it can only be modified in writing. In pertinent part, the Contract states:

> These terms and conditions, the terms and conditions of the individual rental contract signed by the Customer, together constitute the entire Agreement ("This Agreement") for the rental of that equipment identified on the individual rental contract ("EQUIPMENT"; and where necessary EQUIPMENT may be further specified as a "Truck", "Trailer", "Pick Up Truck" or "Van"), including all of its parts. I, the Customer, agree to all terms and conditions of this Agreement. . . . You agree that no employee of Company or any affiliated company has authority to modify the written terms and conditions of the Agreement, and that any modification of the Agreement may only be in writing signed by you and a Company representative.

Furthermore, U-Haul employees do not have authorization to modify the fully executed contract. The U-Haul Rental Contract Addendum states that "no employee

---

[2] The following facts come from Defendants' Separate Statement of Undisputed Material Facts filed concurrently with their summary judgment motion. [Doc. No. 54-2.] Plaintiff did not file an opposition to Defendants' Statement of Undisputed Facts.

1  of Company or any affiliated company has authority to modify the written terms and
2  conditions of the Agreement, and that any modification of the Agreement may only
3  be in writing signed by you and a Company representative."
4       On January 26, 2012, pursuant to the order of the Magistrate Judge, defense
5  counsel provided Plaintiff a copy of the Contract executed by Basset on May 20,
6  2011, as well as a copy of the Addendum to the Contract.
7       U-Haul avers it has limited liability according to the Rental
8  Contract Addendum. The Rental Contract Addendum states:

> Customer shall indemnify, defend and hold harmless, Company, its directors, officers, agents, employees, independent contractors, parents and affiliates and each of them, from and against any and all claims, demands, causes of action, suits, costs, damages, expenses, losses and liabilities including reasonable attorneys' fees (attorneys' fees not applicable in Ohio hereunder) incurred or to be incurred, arising out of or resulting from, Customers' use, operation or possession of the EQUIPMENT, or any breach of the rental contract by Customer.

15  Basset stole the U-Haul truck by "hot[-]wiring" the ignition and fleeing with
16  the Plaintiff's alleged property. The truck at issue was impounded by the San Diego
17  Police Department. The truck was returned by the San Diego Police Department
18  with certain personal property inside. Defendants do not have any basis to
19  determine who owns that property. U-Haul has arranged for the secure storage of
20  the personal property at issue, and that property has remained in storage pending a
21  determination of the owner or the consent of Basset, the contracting customer.
22       At various hearings and proceedings before the Magistrate Judge in this case,
23  defense counsel advised the Court and Plaintiff that Defendants would arrange for
24  the return of the personal property that is being stored at a U-Haul Center in San
25  Diego if he provided either (a) a notarized letter signed by Basset giving permission
26  to Plaintiff to take possession of the personal property, or (b) a Court order directing
27  the return of the property to Plaintiff. Plaintiff has not provided either. Rather,
28  Plaintiff told defense counsel that Basset threatened Plaintiff with physical harm

and that Plaintiff would not be able to obtain Basset's consent to release the property to Plaintiff. Defense counsel suggested to Plaintiff that he should consider amending the complaint in this action to add a claim against Basset so at to permit the adjudication of Plaintiff's rights to the personal property against Basset. At the suggestion of the Magistrate Judge, defense counsel arranged for Plaintiff to inspect the personal property so that he could determine what was in storage, and obtain proof that it belonged to him.

## II.  LEGAL STANDARD

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the non-moving party, "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of presenting the basis for its motion and identifying those portions of the record, together with affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. If the moving party meets its initial responsibility, the burden then shifts to the opposing party who must demonstrate the existence of a factual dispute. The fact in contention must be material, *i.e.*, a fact that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986), and the dispute must be genuine, *i.e.*, the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* at 250; *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).

Rule 56(e) compels the non-moving party to "set out specific facts showing a genuine issue for trial" and not to "rely merely on allegations or denials in its own pleading." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Moreover, Rule 56(c) mandates the entry of summary judgment against a party who, after adequate time for discovery, fails to make a showing

sufficient to establish the existence of an element essential to that party's case and on which the party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 322-23.

### III.   DISCUSSION

**A.   Count One: Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing**

The standard elements of a claim for breach of contract are:  (1) the existence of a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to plaintiff therefrom.  *Wall Street Network, Ltd. v. N.Y. Times Co.*, 164 Cal. App. 4th 1171, 1178 (2008).  A person "who is not a party to the contract has no standing to enforce the contract or to recover extra-contract damages."  *Hatchwell v. Blue Shield of Cal.*, 198 Cal. App. 3d 1027, 1034 (1988).  Similarly, while an action for breach of the covenant of good faith and fair dealing sounds in tort, the duty of good faith and fair dealing arises from and exists solely because of the contractual relationship between the parties.  *Gruenberg v. Aetna Ins. Co.*, 9 Cal. 3d 566, 577-78 (1973).  Thus, someone who is not a party to the contract has no standing to enforce it or to recover extra-contractual damages for the wrongful withholding of benefits to the contracting party.  *Jones v. Aetna Cas. & Sur. Co.*, 26 Cal. App. 4th 1717, 1722 (1994).

Here, Defendants aver that Plaintiff does not have standing to sue because he is not a party to the Contract.[3]  [Mot. at 7.]  In opposition, Plaintiff argues that the employees of Defendants created an entirely separate oral agreement, to which Plaintiff is a party.  [Opp., Doc. No. 61 at 2.]  Plaintiff further argues that genuine issues of material fact exist as to Defendants' employees and corporate store closing procedures.  [*Id.* at 3.]  Although Plaintiff has provided no evidence for these assertions, he attempts to assure the Court that depositions and further discovery

---

[3] Plaintiff admits he was not a party to the written Contract.  [Compl. ¶ 45.]

1 will uncover the role of the Defendants' employees in the transaction and alleged
2 oral agreement. [*Id.* at 2.]
3   In this case, Plaintiff filed the Complaint on August 19, 2011. All discovery
4 was required to be completed by February 1, 2013. [Scheduling Order, Doc. No. 46
5 at 2.] Plaintiff had ample time–over 17 months–to conduct discovery and take the
6 necessary depositions of Defendants' employees. Thus far, Plaintiff admits he has
7 not engaged in any discovery. [Opp. at 2.] Plaintiff's excuse that he was
8 incarcerated for a brief period of time during the 17 months is not persuasive.
9   Here, Plaintiff provides no documents, testimony, declarations or any other
10 type of evidence regarding the purported oral agreement or the Defendants'
11 corporate store closing procedures. Plaintiff cannot merely rely on the allegations
12 in his Complaint. He must set out specific facts showing a genuine issue for trial.
13 Because he has not done so, the Court **GRANTS** the motion for summary judgment
14 with respect to Count One.

**B.     Count Two: Unjust Enrichment and Quasi-Contract**

16   A quasi-contract is one imposed by equity to prevent unjust enrichment.
17 *Hillco Inc. v. Stein*, 82 Cal. App. 3d 322, 327 (1978). "[T]here is no cause of action
18 in California for unjust enrichment." *Melchior v. New Line Prods., Inc.*, 106 Cal.
19 App. 4th 779, 793 (2003). Rather, unjust enrichment is synonymous with
20 restitution. *Dinosaur Dev., Inc. v. White*, 216 Cal. App. 3d 1310, (1989). "Under
21 the law of restitution, [a]n individual is required to make restitution if he or she is
22 unjustly enriched at the expense of another. *Durell v. Sharp Healthcare*, 183 Cal.
23 App. 4th 1350, 1370 (2010) (internal citations and quotations omitted). A person is
24 enriched if the person receives a benefit at another's expense. *Id.*; *see also Peterson*
25 *v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1593 (2008). The term "benefit" denotes
26 any form of advantage. *Ghirardo v. Antonioli*, 14 Cal. 4th 39, 50 (1996). A benefit
27 is conferred not only when one adds to the property of another, but also when one
28 saves the other from expense or loss. *Id.*

"The fact that one person benefits another is not, by itself, sufficient to require restitution. The person receiving the benefit is required to make restitution only if the circumstances are such that, as between the two individuals, it is *unjust* for the person to retain it." *Durell*, 183 Cal. App. 4th at 1370 (emphasis in original). As a matter of law, an unjust enrichment claim does not lie where the parties have an enforceable express contract. *Cal. Med. Assn. v. Aetna U.S. Healthcare of Cal., Inc.*, 94 Cal. App. 4th 151, 172 (2001).

Plaintiff argues that Defendants "would be unjustly enriched if allowed to collect rental fees from Plaintiff" when he did not have the benefit of the use of the rental vehicle. [Compl. ¶ 35.] Defendants assert they have received no benefit from Plaintiff because the personal property has been locked in a secured storage facility pending the outcome of this controversy. [Mot. at 6.]

Here, the Court agrees with Defendants. As an initial matter, the Court is unsure whether Plaintiff's reference to "rental fees" pertains to storage fees for the time the property has been stored by Defendants or service fees regarding the original rental of the vehicle. In either case, Plaintiff has provided no evidence that Defendants received a benefit. Plaintiff's contention that he did not receive the benefit of the use of the rental vehicle is irrelevant because the focus "is on the wrongdoer's enrichment, not the victim's loss." *Cnty. of San Bernardino v. Walsh*, 158 Cal. App. 4th 533, 542 (2007). Even if Defendants received a benefit, Plaintiff has provided no evidence that Defendants are *unjustly* retaining the benefit. Accordingly, the Court **GRANTS** the motion for summary judgment on Count Two.

**C.     Count Three: Negligence**

    **1.     Duty of Care**

"An action in negligence requires a showing that the defendant owed the plaintiff a legal duty, that the defendant breached the duty, and that the breach was a proximate or legal cause of injuries suffered by the plaintiff." *Ann M. v. Pac. Plaza Shopping Ctr.*, 6 Cal. 4th 666, 673 (1993); *Mintz v. Blue Cross of Cal.*, 172 Cal.

App. 4th 1594, 1610 (2009) (liability for negligent conduct may only be imposed where there is a duty of care owed by the defendant to the plaintiff or to a class of which the plaintiff is a member). A duty of care may arise through statute or by contract. *Mintz*, 172 Cal. App. 4th at 1610. Alternatively, a duty may be premised upon the general character of the activity in which the defendant engaged, the relationship between the parties or even the interdependent nature of human society. *J'Aire Corp. v. Gregory*, 24 Cal. 3d 799, 803 (1979). Whether a duty of care is owed is a legal question and is decided on a case-by-case basis. *Id.* at 806.

Here, Plaintiff alleges that Defendants "owed [Plaintiff] a duty of ordinary care . . . as renters of the vehicle[]." [Compl. ¶ 40.] Plaintiff further states that Defendants "were negligent . . . in the execution of the agreement by failing to contract under the terms intended by Plaintiff" and as represented by Defendants' employees. [*Id.* ¶ 27.] Defendants assert that Plaintiff's negligence claim fails because Defendants owed Plaintiff no duty as Plaintiff was neither a party to the Contract nor a customer of Defendants. [Mot. at 7.]

The Court agrees with Defendants. Plaintiff has provided no evidence of a statute or contract that creates a duty of care in Plaintiff's favor. Furthermore, the general character of the activity does not indicate a duty of care existed. Defendants refused to rent Plaintiff the vehicle because he did not possess picture identification. Defendants did not list Plaintiff's name on the Contract. [Decl. of James Evans, Exh. 1.] The tenuous business relationship, if any, between Defendants and Plaintiff and the general character of Defendants' activity does not create a duty of care.

### 2. Superseding Cause

The principle of "superseding cause" absolves a tortfeasor, even though his conduct was a substantial contributing factor, when an independent event intervenes in the chain of causation, producing harm of a kind and degree so far beyond the risk the original tortfeasor should have foreseen that the law deems it unfair to hold

1  him responsible. *Soule v. Gen. Motors Corp.*, 8 Cal. 4th 548, 573 n.9 (1994).
2  "[W]here [an] injury was brought about by a later cause of independent origin . . .
3  [the question of proximate cause] revolves around a determination of whether the
4  later cause of independent origin, commonly referred to as an intervening cause,
5  was foreseeable by the defendant or, if not foreseeable, whether it caused injury of a
6  type which was foreseeable.  If either of these questions is answered in the
7  affirmative, then the defendant is not relieved from liability towards the
8  plaintiff . . . ." *People v. Dawson*, 172 Cal. App. 4th 1073, 1094 (2009) (citations
9  and internal quotations omitted; alterations in original).

10     Here, Plaintiff admits that Basset, the acquaintance who rented the U-Haul
11 truck, "stole the vehicle by hot[-]wiring the ignition and fleeing with Plaintiff's
12 property." [Compl. ¶ 20.]  Thus, even if Defendants owed Plaintiff a duty of care
13 and breached that duty in connection with the rental agreement, it was not
14 reasonably foreseeable that Basset would hot-wire the truck and flee with Plaintiff's
15 property.  Moreover, Plaintiff, Basset, or both, represented to U-Haul that Basset
16 had a valid drivers license.  Thus, that the police impounded the rental truck
17 because Basset had a suspended license was also not foreseeable to U-Haul.
18 Because Basset's actions were so far beyond the risk that Defendants should have
19 foreseen, the law deems it unfair to hold Defendants responsible on a negligence
20 theory.  Accordingly, the Court **GRANTS** the motion for summary judgment on
21 Count Three.

22 **D.    Plaintiff's Motion For Leave To File Amended Complaint**
23      **A.    Legal Standard**
24     Under Federal Rule of Civil Procedure 15(a), leave to amend a pleading
25 should be granted as a matter of course, at least until the defendant files a
26 responsive pleading.  After that point, leave to amend should be granted unless
27 amendment would cause prejudice to the opposing party, is sought in bad faith, is
28 futile, or creates undue delay. *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149,

1159 (9th Cir. 1989).

    Nonetheless, Rule 15 does not provide the standards with which the Court considers Plaintiff's request to file an amended complaint. Once the district court files a pretrial scheduling order pursuant to Rule 16, which establishes a timetable for amending pleadings, Rule 16 controls and provides in part: "[the Court] . . . must issue a scheduling order . . . [to] limit the time to join other parties, amend the pleadings, complete discovery, and file motions. . . . A schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(1), (b)(4).

    The decision to modify a scheduling order is within the broad discretion of the district court. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607 (9th Cir. 1992) (quoting *Miller v. Safeco Title Ins. Co.*, 758 F.2d 364, 369 (9th Cir. 1985)). Rule 16 provides a stringent standard whereby the party who seeks to amend the Court's scheduling order must show "good cause" why the Court should set aside or extend a pleading deadline. *See* Fed. R. Civ. P. 16(b)(4). The scheduling order may only be amended with the Court's consent. *Id.*

    Under Rule 16(b)'s good cause standard, the Court's primary focus is on the movant's diligence in seeking the amendment. *Johnson*, 975 F.2d at 609. "Good cause" exists if a party can demonstrate that the schedule "cannot reasonably be met despite the diligence of the party seeking the extension." *Id.* (citing Fed. R. Civ. P. 16 advisory committee's notes (1983 amendment)). "[C]arelessness is not compatible with a finding of diligence and offers no reason for a grant of relief. Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification." *Id.* (citations omitted). If the party seeking modification was not diligent in his or her pretrial preparations, the inquiry should end there and the measure of relief sought from the Court should not be granted. *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002); *Johnson*, 975 F.2d at 609. The party seeking to continue or extend

the deadlines bears the burden of proving good cause. *See Zivkovic*, 302 F.3d at 1087; *Johnson*, 975 F.2d at 608.

### B.     Discussion

Plaintiffs seeks to amend his Complaint for three reasons.  First, he seeks to replace "Americo Insurance Company," which he originally and erroneously sued in 2011, with "Repwest Insurance Company."  Second, he wishes to "more accurately plead with particularity the factual allegations against the Defendants," namely the "presumption of negligence" created by a "separate oral agreement made by Defendant's [sic] employees."  Finally, Plaintiff wishes to identify several new defendants which were previously identified in the Complaint as "Doe" defendants.

Plaintiff has failed to satisfy Rule 16(b)'s good cause requirement.  He admits he did not propound any discovery on Defendants.  However, despite this lack of formal discovery, Plaintiff now avers he has recently discovered the identities of new defendants and that "Repwest Insurance Company" is the "correct" insurance company to be named.  However, these facts beg the questions, "How did Plaintiff discover the identities of the new defendants without any discovery?" and "Why did it take so long to discover the identity of the new defendants if formal discovery was not necessary to do so?"  Nor does Plaintiff explain why he now asks, at this late stage of the case, to plead additional facts related to "presumption of negligence" related to the alleged oral agreement.  Plaintiff's failure to engage in formal discovery and failures to appear at court-ordered conferences demonstrate his lack of diligence.  Furthermore, Defendants are correct that Plaintiff's request would cause undue delay of this action–now pending for nearly two years–and would severely prejudice Defendants.  Plaintiff's motion for leave to file an amended Complaint is **DENIED**.

/ / /

/ / /

/ / /

## IV. CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendants' motion for summary judgment and **DENIES** Plaintiff's motion for leave to file an amended complaint. This Order resolves all remaining claims as to all parties.[4] Accordingly, the Court instructs the Clerk of Court to enter judgment in favor of Defendants and terminate the case.

**IT IS SO ORDERED.**

DATED: May 17, 2013

*[signature]*

Hon. Michael M. Anello
United States District Judge

---

[4] The Court does not address Claim Four for "opportunity loss" and Claim Five for "declaratory relief," as both are measures of damages, not separate cognizable claims. *See generally Rhodes v. Robinson*, 408 F.3d 559, 565-66 n.8 (9th Cir. 2005) (separate request for declaratory relief is subsumed by determination of Plaintiff's substantive claims); *Sacramento Reg'l Transit Dist. v. Grumman Flxible*, 158 Cal. App. 3d 289, 297 (1984) (opportunity loss) (quoting *Int'l Knights of Wine, Inc. v. Ball Corp.*, 110 Cal. App. 3d 1001, 1008 (1980) (Fleming, J., dissenting in part)). The Court's resolution of the substantive claims in favor of Defendants precludes the award of opportunity loss damages or declaratory relief in Plaintiff's favor.